IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GORDON G. HENDRY, | ) Bank. No. 06-11364 (BLS) |
| | ) Adv. No. 08-51871 (BLS) |
| Appellant, | ) |
| | ) |
| v. | ) Civ. No. 10-416-SLR |
| | ) |
| MARIE S. HENDRY, Administratrix of | ) |
| the Estate of David J. Hendry, | ) |
| | ) |
| Appellee. | ) |

**MEMORANDUM ORDER**

At Wilmington this 3rd day of April, 2012, having reviewed the papers filed in connection with the above captioned bankruptcy appeal;

IT IS ORDERED that the appeal is denied and the order of the Bankruptcy Court dated April 9, 2010 is affirmed, for the reasons that follow:

1. **Background.** The above captioned adversary action relates to longstanding disputes between Gordon G. Hendry ("GH") and his now deceased father, David J. Hendry ("DH"), concerning the ownership of certain real property ("the Property"). In 1991, DH commenced suit against GH in the Court of Chancery of the State of Delaware, challenging the validity of a deed to the Property that DH allegedly signed in 1985. *Hendry v. Hendry*, No. 12236, 1998 WL 294009 (Del. Ch. June 3, 1998) ("*Hendry I*"). In 1994, DH and GH orally agreed to settle *Hendry I* by dividing the

Property into Parcels A and B, with DH receiving the income producing Parcel A[1] and GH receiving the non-income producing Parcel B. A written version of the agreement was never executed, because the parties disputed the location of the boundary line for the physical division between Parcels A and B.

2. After DH died, Marie S. Hendry,[2] the appellee at bar, was substituted as the plaintiff in *Hendry I*, as she served as both the Administratrix of DH's estate and the co-trustee of a trust that was the designated beneficiary in DH's will. Under that will, title to the Property vested in the trust upon DH's death. In May 1997, MH filed a motion to enforce the settlement agreement in *Hendry I*. On June 3, 1998, the Court of Chancery issued its opinion, holding that the oral agreement was enforceable. *Id.* at 3. The court thereafter ordered specific performance of the agreement, requiring that the Property be divided so that DH received "the developed, income producing portion of the Property and [GH received] the undeveloped, non-income producing portion." *Id.* This opinion and order were affirmed by the Delaware Supreme Court on December 29, 1999. *Hendry v. Hendry*, 746 A.2d 276 (Del. 1999).

3. "Notwithstanding the Supreme Court's affirmance, however, no deeds effectuating the specified division of the Property were ever executed." *Hendry v. Hendry*, Nos. 12236, 18625, 2006 WL 4804019 (Del. Ch. May 30, 2006) ("*Hendry II*"). MH thereafter instituted suit against GH claiming, *inter alia*, misappropriation of funds, interference with contracts, and unjust enrichment. In response, GH counterclaimed,

---

[1]Parcel A was the developed portion of the Property, upon which a shopping center with various tenants was situated ("Dave's Shopping Center").

[2]MH is the widow of DH but not GH's mother.

2

alleging, among other things, that a certain lease agreement ("the Lease") was still valid. *Id.* at *3. The Lease had been executed in 1986 between DH and GH, as owners of the Property, and "Dave's Shopping Center Partnership" ("the Partnership"), comprised of DH, GH, and GH's son.³ "[T]he Partnership was to act as lessor to rent the [P]roperty and enter into leases with other persons or entities." *Id.* at *4. At least some of the tenants of Dave's Shopping Center leased from the Partnership. When DH passed away in 1989, the Partnership dissolved as a matter of law. *Id.* The Partnership assets included the Lease. DH's interest in the Lease passed to the trust upon his death; the remainder interest was passed to GH.

4. In *Hendry II*, the Court of Chancery concluded that *Hendry I* "contemplated the transfer of all rights, title and interest in Parcel A to the Estate" and ordered the parties "to execute an appropriate deed or deeds partitioning the [P]roperty into Parcel A and Parcel B as defined in this Court's 1998 Opinion." *Hendry II*, 2006 WL 4804019 at *6. The Court of Chancery then turned to the issue of "how the terms of the settlement, as effectuated by the 1998 Opinion and 1999 Order, affected Gordon Hendry's rights with respect to the . . . . Lease. Specifically, the Court must consider whether Gordon Hendry retained any of his rights or interests in the . . . Lease after the Court of Chancery declared on June 3, 1998 that the settlement agreement in No. 12236 was valid and enforceable." *Id.* at *7. The Court of Chancery held in this regard:

> The Court holds that Gordon Hendry relinquished any leasehold interest that he had in Parcel A when he agreed to transfer "all right, title and interest" in the Property to David J. Hendry. Therefore, when the Court of Chancery ordered on March 29, 1999 that the

---

³GH's son passed and GH inherited his son's interest in the Lease.

3

> settlement be enforced and the Property partitioned, Gordon
> Hendry lost all interest in Dave's Shopping Center, the [Lease] and
> any rents there were paid thereafter by any tenants of the Shopping
> Center.

*Id.* at *8. Moreover, although the Lease was not explicitly discussed in *Hendry I*, the record from that litigation indicated that the Court had recognized in *Hendry I*

> that rents were being received from the income producing property
> and concluded that the parties' settlement agreement intended
> those rents to go to David J. Hendry in the future. These are the
> same rents that Gordon Hendry now asserts a right to in his
> counterclaim. Thus, Gordon Hendry had the opportunity in No.
> 12236 to assert any continuing interest or right he claimed in
> Parcel A based on his two-thirds interest in the [Lease]. In my
> opinion, the Court in the prior litigation understood from Gordon
> Hendry's silence on the question of rents or income that he had
> agreed to relinquish any such claims as to Parcel A as part of the
> settlement agreement.

*Id.* at *9. The Court of Chancery concluded that res judicata barred GH's counterclaims in *Hendry II*.

5. Following entry of the opinion in *Hendry II*, GH filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on November 30, 2006. MH filed two claims related to rents on the Property in GH's bankruptcy case. "Claim 8" was litigated by way of an adversary proceeding ("First Adversary"), in which the Bankruptcy Court concluded that GH was liable for return of the rents he had collected, finding that the settlement agreement was "very clear" and GH's assertion to the contrary not credible. *Hendry v. Hendry*, 428 B.R. 68, 73 (Bankr. D. Del. 2010) ("*Hendry III*"). The Bankruptcy Court also awarded MH interest running from the date the order related to the *Hendry II* was entered. In this regard, the Court noted that GH "had no right to those funds . . . [D]espite having no right to the funds, he took the money . . . . He had

4

the ability to use it and to do with it whatever he chose. Therefore, interest on those funds should have inured to the benefit of [MH] . . . .'" *Id.* The Court entered an order ("2008 Order") allowing claim 8.

6. On August 26, 2008, GH converted his case to one under Chapter 7 of the Bankruptcy Code. Several months later, MH initiated *Hendry III*, asserting therein that claim 8 is nondischargeable pursuant to 11 U.S. C. § 523. Following a summary judgment motion practice, the Bankruptcy Court ruled as follows:

a. GH is estopped from re-litigating certain facts relating to non-dischargeability established in the First Adversary, to wit, his rent collection was wrongful, he knew he had no legal right to the rents, he deposited such rents into his own accounts for his and his wife's benefit, and he has not paid MH for any wrongfully collected rents. *See In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997) ("Collateral estoppel is applicable if the facts established by the previous judgment . . . meet the requirements of nondischargeability listed in 11 U.S.C. § 523 . . . .").

b. MH was entitled to summary judgment on the nondischargeability of claim 8 pursuant to § 523(a)(4)[4] of the Bankruptcy Code, based on the record findings that GH misappropriated the rental income for his own benefit and did so with fraudulent intent. *See In re Giarratano*, 358 B.R. 106, 110 (D. Del. 2004) ("[T]o establish a claim for larceny, a party must show that: 1) the debtor misappropriated the subject funds for his or her own benefit; and 2) the debtor did so with fraudulent intent."). Consistent with its finding above, the Bankruptcy Court determined that GH

---

[4]Section 523(a)(4) prevents discharge of an individual debtor from any debt "for larceny."

5

was barred from asserting that he lawfully collected the rents. With respect to fraudulent intent, the Court reviewed the record in light of the "totality of the circumstances and the conduct of the person accused," *Hendry III*, 428 B.R. at 79 (quoting *In re Rose*, 934 F.2d 901, 904 (7th Cir. 1991)), and concluded that the evidence before the Court was

> sufficient to show that [GH] intended to misappropriate the rents for his own benefit. Based on the extensive record already developed in this case, [GH's] self-serving statements that he believed some of the rents were his are not sufficient to create a genuine factual issue and summary judgment is appropriate.

*Hendry III*, 428 B.R. at 79.

c. The Bankruptcy Court alternatively found that MH was entitled to entry of a summary judgment on the nondischargeability of claim 8 pursuant to § 523(a)(2)(A)[5] of the Bankruptcy Code, based on the record findings that GH acted with fraudulent intent in taking the rents. Rather than applying traditional common law fraud concepts,[6] the Bankruptcy Court started its analysis with the underlying goal of § 523, that is, "limiting the availability of an unencumbered fresh start to 'honest but unfortunate' debtors." *Id.* at 81 (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

Given this fundamental policy, it is clear that a debt acquired as

---

[5]Section 523(a)(2)(A) prevents discharge of an individual debtor from any debt "for money, property, services . . . to the extent obtained by -- false pretense, a false representation, or actual fraud."

[6]To prove actual fraud under the common law, a creditor must prove that the debtor made a misrepresentation to the creditor with the intent that the creditor rely upon the misrepresentation, and the creditor, in fact, does justifiably rely upon such to his detriment. *See Field v. Mans*, 516 U.S. 59, 70-71 (1995).

6

> a direct result of a debtor's planned deceit is within the ambit of section 523(a)(2)(A), irrespective of whether the debt was incurred by conduct that meets the technical requirements of common law fraud. To find otherwise rewards fraudsters who carry out their misdeeds through indirect, yet equally deceptive, means and does violence to the policy behind section 523(a)(2)(A).

*Id.* The Bankruptcy Court concluded: "Based on the facts found in the First Adversary and the evidence before this Court, no rational trier of fact could find that [GH] did not act with fraudulent intent in taking the rents." *Id.* at 82.

7. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *See In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

7

8. **Analysis.** GH argues that the Bankruptcy Court "erred in concluding that [MH] proved the fraud and larceny exceptions to discharge of [claim 8]. The primary reason for its erroneous conclusion was the failure to consider the impact of the Lease in its legal analysis. The Lease was not held to be ineffective until about 5 years after [GH] stopped collecting Property rents. . . . Consequently, there was a reasonable justification (the Lease) for [GH] to have collected rents, which barred a finding of false representations and fraudulent intent essential to concluding the fraud and larceny exceptions applied." D.I. 9 at 7-8.

9. I disagree. The Court of Chancery made it clear in *Hendry II* that, with the issuance of *Hendry I*, it reasonably could not be disputed that the oral settlement agreement between GH and DH had been deemed enforceable and that GH was not entitled to any benefits from Parcel A, the income producing part of the Property. Clearly, GH ignored the mandate of the Court in *Hendry I*, as he has admitted retaining all of the rents generated from Parcel A for the time period April 1996 though August 2001, thus forcing MH to engage in continued litigation in *Hendry II*, the First Adversary and *Hendry III* in order to enforce the division of the Property as contemplated by the settlement agreement. Under these circumstances, where every court that has considered GH's conduct has found it to be wrongful, the mere assertion by GH that he justifiably relied on the terms of the Lease for his conduct is insufficient to create a triable issue of fact.

10. **Conclusion.** GH has not identified a genuine issue of material fact as to his fraudulent intent in collecting and/or retaining the rental income from Parcel A. The

8

Bankruptcy Court, therefore, did not err in finding that the appellee, MH, carried her burden to prove, by a preponderance of the evidence, that claim 8 is nondischargeable pursuant to 11 U.S.C. § 523 (a)(4) or, in the alternative, § 523(a)(2)(A).

                                                                       */s/*
                                        United States District Judge